**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JAMES WILLIAMS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>YALE NEW HAVEN HEALTH SERVICES CORPORATION,<br><br>*Defendant*. | Civil Action No. 3:26-cv-00421-OAW<br><br>The Honorable Omar A. Williams, United States District Court Judge |

**REPLY BRIEF IN SUPPORT OF DEFENDANT YALE NEW HAVEN HEALTH SERVICES CORPORATION'S RULE 12(B)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

A. THERE IS A SPECIFIC INTENT REQUIREMENT FOR THE FEDERAL WIRETAP ACT'S ONE-PARTY CONSENT RULE. .......... 2

B. PLAINTIFF'S ARGUMENTS IN HIS OPPOSITION BRIEF CONFUSE THE *ACTUS REUS* WITH THE *MENS REA* FOR A CRIME. .......... 4

C. PLAINTIFF DOES NOT PLAUSIBLY ALLEGE YALE NEW HAVEN VIOLATED HIPAA IN ANY EVENT. .......... 7

**CONCLUSION** .......... **10**

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Hospital Association v. Becerra*,
738 F.Supp.3d 780 (N.D. Tex. 2024) .......... 10

*B.N. v. Oregon Reproductive Medicine, LLC, d/b/a ORM Fertility*,
2026 WL 915343 (D. Or. Apr. 3, 2026) .......... 10

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 1, 10

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F.Supp.3d 369 (S.D.N.Y. 2024) .......... 10

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .......... 10

*In re Grp. Health Plan*,
709 F.Supp.3d 707 (D. Minn. 2023) .......... 10

*Hannant v. Culbertson Memorial Hospital Foundation*,
2026 WL 777296 (S.D.N.Y. Mar. 19, 2026) .......... 10

*Hartley v. Univ. of Chicago Med. Ctr.*,
2025 WL 2802317 (N.D. Ill. Oct. 1, 2025) .......... 10

*In re High Fructose Corn Syrup Antitrust Litig.*,
216 F.3d 621 (7th Cir. 2000) (Posner, J.) .......... 2

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (Mar. 19, 2024) .......... 10

*Kidd v. Thomson Reuters Corp.*,
925 F.3d 99 (2d Cir. 2019) .......... 10

*Kurowski v. Rush System for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .......... 10

*Martinez v. Mentavi*,
2025 WL 3780427 (W.D. Mich. Oct. 9, 2025) .......... 10

*Mastafa v. Chevron Corp.*,
770 F.3d 170 (2d Cir. 2014) .......... 10

*Mayer v. Midwest Physician Administrative Services, LLC*,
2025 WL 963779 (N.D. Ill. Mar. 31, 2025) .......... 10

*Meadows v. United Services, Inc.*,
963 F.3d 240 (2d Cir. 2020) .......... 1, 2

*Morissette v. United States*,
342 U.S. 246 (1952) .......... 10

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 10

*Pattison v. Teladoc Health, Inc.*,
2025 WL 1756364 (S.D.N.Y. June 25, 2025) .......... 10

*People v. Davis*,
--- N.E.3d ----, 2026 IL App (3d) 250122 .......... 10

*Planned Parenthood Fed of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 10

*Ruan v. United States*,
597 U.S. 450 (2022) .......... 10

*Smith v. Loyola Med Ctr.*,
2024 WL 3338941 (N.D. Ill. Jul. 9, 2024) .......... 10

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) .......... 10

*State v. Wilson*,
830 N.W.2d 849 (Minn. 2013) .......... 10

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ....................10

*Strong v. LifeStance Health Grp. Inc.*,
2025 WL 317552 (D. Ariz. Jan. 28, 2025) ....................10

*Theys v. Dental Intel., Inc.*,
2026 WL 636743 (N.D. Ill. Mar. 6, 2026)....................10

*Tilton v. Playboy Entm't Grp., Inc.*,
554 F.3d 1371 (11th Cir. 2009) ....................10

*United States v. Bailey*,
444 U.S. 394 (1980)....................10

*United States v. Fortier*,
956 F.3d 563 (8th Cir. 2020) ....................10

*United States v. Scotti*,
47 F.3d 1237 (2d Cir. 1995)....................10

*United States v. Woodard*,
239 F.3d 159 (2d Cir. 2001)....................10

**STATUTES, RULES & OTHER AUTHORITIES**

15 U.S.C. § 1681....................10

18 U.S.C. § 2511....................2

42 U.S.C. § 1320d-6 ....................2

FED R. CIV. PRO. R. 12 ....................1

LAFAVE & OHLIN, Criminal Law § 5.1(a) (7th Ed. 2023)....................10

**INTRODUCTION**

Plaintiff's opposition brief operates from a very basic premise: so long as they can allege that defendant Yale New Haven violated HIPAA, then he's necessarily made out a claim under the federal Wiretap Act as well. (Dkt. # 32, *Opp.* 7 ("Because Plaintiff Plausibly Alleges that YNH Purposely Violated HIPAA, It Is Subject to ECPA Liability Under the Crime-Tort Exception.").)

For the reasons explained in Yale New Haven's opening brief and further below, in this case about alleged privacy violations on a public website, plaintiff has not plausibly alleged Yale New Haven violated HIPAA. More fundamentally, though, plaintiff makes this argument without responding to Yale New Haven's argument showing, as a textual matter, why this interpretation of the federal Wiretap Act is wrong. (Dkt. # 17-1, *Mem. in Supp.* 9-11.) As the Second Circuit held in *Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010): "If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation." *Id.* at 100. "But if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act." *Id.*

Plaintiff's Wiretap Act claim fails because he does, and cannot, plausibly allege Yale New Haven had a criminal or tortious purpose *in mind* at the time Yale New Haven allegedly placed tracking technologies on Yale New Haven's public website. Under his own allegations, Yale New Haven's purpose was to engage in advertising, and a purpose to engage in advertising is not criminal, and is not tortious, even if the defendant's *actions* in undertaking this advertising may ultimately turn out to violate some other law. This includes HIPAA itself, which otherwise allows for no private right of action. *Meadows v. United Services, Inc.*, 963 F.3d 240, 244 (2d Cir. 2020).

Defendant Yale New Haven respectfully submits the following reply brief in support of Yale New Haven's Rule 12(b)(6) motion to dismiss:

### A. There Is A Specific Intent Requirement for the Federal Wiretap Act's One-Party Consent Rule.

Plaintiff argues "proof of specific intent is not required to establish a violation of HIPAA or ECPA." (Dkt. # 32, *Opp.* 17.) Yale New Haven agrees with respect to HIPAA, which requires only a knowingly *mens rea*. *See* 42 U.S.C. § 1320d-6(a)(3). Yet, there is no private right of action under HIPAA, and thus plaintiff cannot bring a direct claim under the statute. *Meadows v. United Services, Inc.*, 963 F.3d 240, 244 (2d Cir. 2020) ("By delegating enforcement authority to the Secretary of the Department of Health and Human Services, the statute clearly reflects that Congress did not intend for HIPAA to create a private remedy.").

The answer on this specific intent point is different for the federal Wiretap Act, however, at least for parties to the communication. Here, the statutory text, set forth in 18 U.S.C. § 2511(2)(d), sets forth its own, independent *mens rea* requirement, separate and apart from the alleged violation of any other law.

Specifically, under the federal one-party consent rule, the federal Wiretap Act does not apply to any alleged interception made by a party to the conversation "unless such communication is intercepted ***for the purpose of*** committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* (emphasis added). As the Seventh Circuit has explained: "Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, unless the person is both not acting under color of state law and has a criminal or tortious purpose." *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000) (Posner, J.). "If by virtue of sections 2511(2)(c) or (d) an interception is not prohibited by Title III, there are *no* Title III restrictions on its use." *Id.* at 624 (emphasis in original). "Section 2511 exempts the conversations covered by it from the *entirety* of Title III." *Id.* at 625 (emphasis in original).

And, in interpreting *this* statutory language, plaintiff does not address the numerous cases cited in Yale New Haven's opening brief showing that the legislative use of the specific statutory language "for the purpose of" in turn establishes the *mens rea* requirement for a specific intent crime. *See Tilton v. Playboy Entm't Grp., Inc.*, 554 F.3d 1371, 1377 (11th Cir. 2009); *United States v. Fortier*, 956 F.3d 563, 566-67 (8th Cir. 2020); *State v. Wilson*, 830 N.W.2d 849, 853-54 (Minn. 2013); *People v. Davis*, --- N.E.3d ----, 2026 IL App (3d) 250122, ¶ 18; Wayne R. LaFave & Jens David Ohlin, Criminal Law § 5.1(a), pg. 312 (7th Ed. 2023) ("[m]any statutes defining conduct which is criminal employ words (usually adverbs) or phrases indicating some type of bad-mind requirement: 'intentionally' or 'with intent to . . .'; 'knowingly' or 'with knowledge that . . .'; '*purposely*' or *'for the purpose of'*") (emphasis added)).

This includes the Second Circuit's decision in *Kidd v. Thomson Reuters Corporation*, 925 F.3d 99, 106 (2d Cir. 2019), where the Court interpreted the statutory language "*for the purpose of furnishing consumer reports*" in 15 U.S.C. § 1681a(f) of Fair Credit Reporting Act. In doing so, the Second Circuit held this same "for the purpose of" statutory language established a specific intent requirement: "As explained above, the long-standing meaning of 'for the purpose,' which we presume Congress understood when it drafted the FCRA, requires specific intent to provide a statutorily-defined 'consumer report.'" *Id.* "Most naturally read, then, 'for the purpose of furnishing consumer reports to third parties' means an entity *must act with the specific intent to supply such a report*." *Id.* (emphasis added).

Plaintiff instead argues Yale New Haven's interpretation of the one-party consent rule as having its own, independent *mens rea* requirement is inconsistent with the Second Circuit's decision in *Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010). (Dkt. # 32, *Opp.* 14-15.) At bottom, plaintiff reads *Caro* as holding that all the tortious or criminal conduct exception requires to apply

is some independent act taken separate from the recording itself, irrespective of the purpose for which that act was taken. (Dkt. # 32, *Opp.* 15.)

The Second Circuit's opinion in *Caro* went further than merely requiring some independent act for the exception to apply, however. To the contrary, the Court found support for this holding in the "for the purpose of" language itself, explicitly holding: "Congress chose the word 'purpose' for a reason. Therefore, the offender *must have as her objective a tortious or criminal result*." *Id.* at 100 (emphasis added). The Second Circuit in *Kidd* relied on *Caro* in reaching its own decision. *See* 925 F.3d at 105 ("We held in *Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010), 'that a cause of action under § 2511(2)(d) requires that the interceptor *intend* to commit a crime or tort independent of the act of recording itself.'") (quoting *Caro*, 618 F.3d at 100, emphasis in original).

### B. PLAINTIFF'S ARGUMENTS IN HIS OPPOSITION BRIEF CONFUSE THE ACTUS REUS WITH THE MENS REA FOR A CRIME.

So, the question thus becomes this: A specific intent to do what?

Plaintiff's complaint answers this question unambiguously, and repeatedly, in the exact same way: to engage in advertising on the Internet, and to analyze the effectiveness of that advertising. (Dkt. # 17-1, *Mem. in Supp.* 3-4 (collecting allegations).) As plaintiff puts it: "The sole purpose of the use of the Tracking Tools on Yale New Haven's Website was marketing and profits." (Dkt. # 1, *Compl.* ¶ 222; *id.*, ¶ 223 ("In exchange for disclosing the Personal Information of its patients, Yale New Haven is compensated by third party vendors like Google in the form of enhanced advertising services and more cost-efficient marketing on their platforms.").)

Yet, a purpose to engage in advertising is neither criminal nor tortious, as the United States Supreme Court has repeatedly held. (Dkt. # 17-1, *Mem. in Supp.* 11-13.) Plaintiff does not dispute this basic point, but instead says the rule should be different in the HIPAA context, where the statute makes the alleged disclosure of protected health information for financial purposes a crime.

As plaintiff argues: "Plaintiff alleges that Defendant intercepted his healthcare communications for the purpose of disclosing his Private Information to unauthorized third-party digital advertising companies for its own commercial gain in direct violation of HIPAA." (Dkt. # 32, *Opp.* 8.)

Under this chain of reasoning, (1) Yale New Haven "consciously," and "intentionally" *placed the tracking technologies on Yale New Haven's public website in the first place*; (2) these technologies in turn caused the disclosures to the third-parties; (3) these disclosures in turn violated HIPAA; and (4) therefore, the exception necessarily applies. (Dkt. # 17, *Opp.* 8, 15.) In other words, under plaintiff's view, because Yale New Haven *acted* "purposefully" in placing the tracking technologies on Yale New Haven's public website, and this purposeful action may ultimately have violated HIPAA—which in turn makes alleged disclosures for financial purposes a crime—*ipso facto*, the exception itself necessarily applies.

There are two main problems with this argument. *First,* plaintiff is conflating two distinct things—the *actus reus* and the *mens rea* for an alleged crime: "It is commonly stated that a crime consists of both a physical part and a mental part; that is, both an act or omission (and sometimes also a prescribed result of action or omission, or prescribed attendant circumstances, or both) and a state of mind." LaFave & Ohlin, *Criminal Law*, § 5.1, pg. 311 (7th Ed. 2023); *United States v. Bailey*, 444 U.S. 394, 402 (1980) ("Criminal liability is normally based upon the occurrence of two factors, 'an evil-meaning mind and an evil doing hand.'") (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952)); *Ruan v. United States*, 597 U.S. 450, 457 (2022) ("we have said that consciousness of wrongdoing is a principal as universal and persistent in mature systems of criminal law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil") (quotation omitted).

Regardless of whether or not HIPAA applies, the defendant's alleged purpose for placing so-called "tracking technologies" on its website is the same: to engage in advertising on the Internet, and to analyze the effectiveness of that advertising. Simply because this *action* may be illegal in the healthcare context and not in others—a point which Yale New Haven disputes below—does not mean that the defendant's alleged *purpose* is any different. As the Western District of Michigan held in rejecting plaintiff's same interpretation of the statute under *Caro*: "these allegations simply state that Defendant intercepted the communication to promote its own business and in doing so violated HIPAA and state tort law. But as the Second Circuit concluded in *Caro*, the crime-tort exception depends on purpose, not alleged results." *Martinez v. Mentavi*, 2025 WL 3780427, at *3-5 (W.D. Mich. Oct. 9, 2025).

*Second*, and relatedly, under this reasoning the exception collapses in and of itself: the exception applies because Yale New Haven purposely installed the so-called "tracking technologies" on its public website, and the tracking technologies themselves in turn cause the disclosure—which also happens to be a legal violation. Here, under plaintiff's allegations in his complaint, the alleged "interception" and the "disclosure" are one and the same, and they both occur simultaneously and in real-time. (Dkt. # 1, *Compl.*, ¶ 8 (alleging "[t]he Tracking Tools *automatically transmit* to third parties every click, keystroke and detail about Users' medical treatment") (emphasis added); *id.*, ¶ 73 ("contemporaneously and surreptitiously re-direct the users' communications to third parties"); *id.*, ¶ 235 (same).)

There is thus no independent act, as courts have repeatedly held. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095-96 (W.D. Wash. 2024) (declining to distinguish between "the act of *recording* and the act of *transmitting*" under the same basic allegations, and dismissing claim be cause "Plaintiff fails to plead a tortious or criminal *use* of the acquired

communications, separate from the recording, interception, or transmission"); *Planned Parenthood Fed of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (holding federal Wiretap Act plaintiff could not meet independent act requirement "by reusing the same criminal purpose—furthering the civil RICO scheme to destroy Planned Parenthood—as both the purpose of the civil RICO claim and the independent criminal or tortious purpose of § 2511(2)(d)").

For all of these reasons, plaintiff's interpretation of the federal Wiretap Act's one-party consent rule and tortious or criminal conduct exception to that rule is wrong. A plaintiff cannot simply reach out and grab any law and say the defendant's actions in making a recording might ultimately have *resulted* in a violation of that law, so the exception applies. Rather, what matters is the defendant's *purpose* for the recording—what was in his or her own mind. While certain crimes (like HIPAA) may be sustained based on "knowledge alone," others—including the specific statutory language "for the purpose of" in the federal Wiretap Act's one-party consent rule—"impose the *additional mens rea* requirement of specific intent or purpose to bring about the crime." *United States v. Scotti*, 47 F.3d 1237, 1246 (2d Cir. 1995) (emphasis added); *see also Mastafa v. Chevron Corp.*, 770 F.3d 170, 191-94 (2d Cir. 2014) (affirming dismissal of a complaint asserting that defendants violated the Alien Tort Statute, which requires "purpose," by "merely knowingly" taking the alleged actions); *United States v. Woodard*, 239 F.3d 159, 162 (2d Cir. 2001) (holding the fact that the defendant "knowingly and willfully" took an action did not support its finding that the defendant acted with specific intent).

### C. PLAINTIFF DOES NOT PLAUSIBLY ALLEGE YALE NEW HAVEN VIOLATED HIPAA IN ANY EVENT.

As a final point: plaintiff's opposition brief continues to label the allegedly intercepted and disclosed communications as "undeniably protected IIHI." (Dkt. # 32, *Opp.* 10.) Yet, the webpage URLs allegedly transmitted to Google and the other third parties concern only Yale New Haven's

public website, *not the authenticated MyChart patient portal*. To the contrary, plaintiff's lone MyChart allegation extends only to the public login page: https://mychart.ynhhs.org/MyChart-PRD/Authentication/Login?. (*Compl.* ¶ 234.) Plaintiff argues this "show[s] Williams logged into the MyChart portal." (*Opp.* at 11.) But at most, all it shows that a browser loaded a publicly available MyChart login page—a page anyone can visit, whether or not the visitor is a Yale New Haven patient. Nothing about the URL shows that *plaintiff* entered credentials, used *his own* credentials, or successfully accessed *his* authenticated MyChart account.

The other URLS alleged in plaintiff's complaint are no different. Plaintiff argues one URL confirms that he booked an appointment with a specific provider. (Dkt. # 32, *Opp.* 11.) But the cited URL contains only a webpage URL for physician-profile URL, a referring "Find a Doctor" URL, and a page title for "Mark Bianchi, MD Otolaryngology | Bridgeport Hospital." (Dkt. # 1, *Compl.* ¶ 234.) It does not show that *plaintiff* was the patient, had a treatment relationship with Dr. Bianchi, attended any appointment, or suffered from any otolaryngology condition. Thus, as the Northern District of Texas held in *Becerra*, the notion that this is "individually identifiable health information" under HIPAA thus also exists in the realm of speculation. *See Am. Hosp. Ass'n v. Becerra*, 738 F.Supp.3d 780, 802 (N.D. Tex. 2024) ("[t]he issue is that the Proscribed Combination does not and cannot identify an individual or the individual's PHI without an unknowable subjective-intent element—an element not countenanced by the controlling statutory text. Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B).").

Plaintiff's contrary authorities do not bridge the gap. Most involved tracking technologies operating inside patient portals, telehealth platforms, or other "authenticated" (*i.e.,* password-protected) webpages. *See Hannant v. Culbertson Memorial Hospital Foundation*, 2026 WL 777296, at *6 (S.D.N.Y. Mar. 19, 2026) (concluding "use of the patient portal and name of her

personal physician" constituted IIHI); *Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364, at *1 (S.D.N.Y. June 25, 2025) (alleging tracking on authenticated telehealth platform, https://my.teladoc.com/); *Gay v. Garnet Health*, 2024 WL 4203263, at *1 (S.D.N.Y. Sept. 16, 2024) (alleging installation of Facebook Tracking Pixel on website and Garnet Health MyChart Account portal); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F.Supp.3d 369, 375 (S.D.N.Y. 2024) (alleging tracking through custom events reflected on patients' MyChart portal, accessible through an app); *Theys v. Dental Intel., Inc.*, 2026 WL 636743, at *2 (N.D. Ill. Mar. 6, 2026) (alleging installation of tracking tools on LocalMed patient portal); *Mayer v. Midwest Physician Administrative Services, LLC*, 2025 WL 963779, at *1 (N.D. Ill. Mar. 31, 2025) (alleging two pieces of software tracked users' interacted with website, portal, and application); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *2 (N.D. Ill. Feb. 21, 2025) (alleging use of Meta Pixel on website and portal); *Kurowski v. Rush System for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) (alleging disclosure of communications with MyChart patient portal).

The remaining cases involved direct identifiers not alleged here, such as specific patient names, email addresses, dates of birth, or addresses. *See B.N. v. Oregon Reproductive Medicine, LLC, d/b/a ORM Fertility*, 2026 WL 915343, at *1 (D. Or. Apr. 3, 2026) (alleging LinkedIn Insight Tag captured consultation form URL as well as "form-field identifiers," including "name, email, date of birth, [and] address fields"); *Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *5 (D. Ariz. Jan. 28, 2025) (alleging information LifeStance transmitted to Meta "included their 'name and email, their medical conditions, treatment and/or specific providers'").

And, finally, others involved the Facebook c_user cookie disclosing Facebook IDs linked to publicly identifiable Facebook profiles; not merely the type of alleged device identifiers at issue by plaintiff's complaint here. *Hartley v. Univ. of Chicago Med. Ctr.*, 2025 WL 2802317, at *2-3

(N.D. Ill. Oct. 1, 2025) (alleging disclosure of plaintiffs' "Facebook IDs"); *Smith v. Loyola Med Ctr.*, 2024 WL 3338941, at *2 (N.D. Ill. Jul. 9, 2024) (alleging disclosure of plaintiffs' "unique Facebook IDs" together with "test results and prescriptions"); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *2 (Mar. 19, 2024) (alleging disclosure of plaintiffs' "Facebook ID" that is "linked to their Facebook profile" and "contains a wide range of demographic and other information ... including pictures, personal interests, work history, relationship status, and other details"); *In re Grp. Health Plan*, 709 F.Supp.3d 707, 713 (D. Minn. 2023) (alleging disclosure of plaintiffs' "unique Facebook ID" linked to their "specific profiles on Facebook").

The Second Circuit rejected the argument that this type of data could constitute "personally identifiable information" under the Video Privacy Protection Act, notwithstanding the fact that this data also included the plaintiff's alleged Facebook "c_user" cookie. *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54-55 (2d Cir. 2025) ("It is implausible that an ordinary person would look at the phrase 'title% 22% 3A% 22-% E2% 96% B7%20The% 20Roast% 20***o***f% - 20Ric% 20Flair' – particularly if the highlighting in Box A is removed – and understand it to be a video title.").

## CONCLUSION

The Court should dismiss plaintiffs' complaint with prejudice for failure to state a claim.

Dated: July 6, 2026

Respectfully submitted,

/s/ *David Carney*

David Carney (*admitted pro hac vice*)
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 861-7634
Fax: (216) 696-0740
dcarney@bakerlaw.com

Philip H. Bieler (ct16252)
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza New York, NY 10111
Telephone: (212) 847-2868
Fax: (212) 589-4201
pbieler@bakerlaw.com

*Attorneys for defendant Yale New Haven Health Services Corporation*